UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 8:20-cv-00207-SB-DFM | Date: | 2/7/2022 |
|---|---|---|---|

| Title: | *Balboa Cap. Corp. v. New Image Dental Lab., Inc., et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER DENYING MOTION FOR ENTRY OF DEFAULT JUDGMENT [Dkt. No. 245]

Balboa Capital Corporation (Balboa) sued New Image Dental Laboratory, Inc. (NIDL) for breach of contract. Asserting that it never intended to enter into an agreement and that a third party, National Processing Alliance, Inc. (NPA), wrongly inserted terms into the agreement to make it appear as if a contract had been formed, NIDL filed a third-party complaint against NPA. NPA subsequently defaulted, and the case proceeded to trial between Balboa and NIDL. A jury rejected NIDL's contention that NPA had engaged in the alleged wrongdoing and found that NIDL did in fact intend to form a contract with Balboa. Having lost at trial, NIDL now seeks to shift the loss to NPA by moving for default judgment based on the same rejected allegation. Motion, Dkt. No. 245-1. NPA opposed NIDL's motion,[1] Dkt. No. 258, and NIDL filed a reply, Dkt. No. 264. For the following reasons, the Court **DENIES** NIDL's motion.

---

[1] NPA's 33-page opposition violates the standing order in this case. *See* Civil Standing Order § 6(c) (stating that "opposition to motions must not exceed 25 pages"). The Court admonishes NPA for its continued flouting of rules and orders.

# I.     FACTUAL BACKGROUND

This case involves a disputed three-party agreement to finance telephone equipment. NIDL, a manufacturer of medical devices, alleges that NPA, a vendor of business goods and services, solicited business for the purpose of providing credit card processing services to NIDL in August of 2019. Third-Party Complaint ¶ 13, Dkt. No. 9. NIDL alleges that, in reasonable reliance on the representations of NPA's agent Andrew Cooke, NIDL electronically signed various documents to set up the credit card processing services. *Id.* ¶ 14. NIDL alleges that Cooke also presented a "Balboa Capital Corporation form" entitled "Equipment Financing Agreement" (EFA), which had no text except for pre-printed terms. *Id.* ¶ 16. According to NIDL, Cooke sought and received a wet signature (rather than an electronic signature) for the EFA. *Id.* Cooke claimed the EFA "was for the future" and was needed for "the credit card processing service relationship that was to be created." *Id.* ¶ 16-17. NIDL alleges that NPA then "heavily altered" the EFA by digitally adding a monthly payment price, a contract term, information about a telephone system and telephone equipment, and additional signatures. *Id.* ¶¶ 21-22. NIDL alleges that NPA "uses an electronic signature capture software application to manipulate signed documents to which its customer does not authorize or even know exist" in order "to create unauthorized relationships and accounts." *Id.* ¶ 34. NIDL asserts it "never sought, never requested, [and] [n]ever received" the telephone system or equipment described in the EFA. *Id.* ¶ 22.

# II.     PROCEDURAL HISTORY

Balboa sued NIDL in Orange County Superior Court for failing to make payments under the EFA. Complaint, Dkt. No. 1-1. On January 31, 2020, NIDL removed the case to this Court. Dkt. No. 1. On February 7, 2020, NIDL filed its answer, Dkt. No. 7, and counterclaimed against Balboa, Dkt. No. 8. NIDL also filed a third-party complaint against NPA, alleging claims for: (1) fraud; (2) negligent misrepresentation; (3) unfair business practices under California Business and Professions Code § 17200; and (4) civil conspiracy.[2] Dkt. No. 9. In

---

Separately, NIDL asserts that NPA has no standing to oppose the motion because of its default. The Court need not address this issue in light of its conclusion on a threshold question that it is bound to consider.

[2] NIDL does not mention the civil conspiracy claim in its moving papers and apparently is not seeking default judgment on that claim.

response, NPA filed a "Petition to Compel Arbitration," based on an arbitration provision in its agreement with NIDL. Dkt. No. 26. Judge Josephine L. Staton, the previously assigned judge, struck the procedurally improper petition, Dkt. No. 27, and subsequently denied NPA's application for ex parte relief from the order striking the petition, Dkt. No. 37. After NPA failed to participate in the preparation and filing of the Joint Rule 26(f) report, Dkt. No. 38, NIDL requested that the clerk enter default against NPA because, other than its stricken filings, NPA had not "taken any further or additional action to respond to the Third-Party Complaint." Dkt. No. 45. On May 1, 2020, the clerk entered default against NPA as to the third-party complaint on the ground that NPA had "failed to plead or otherwise defend" in this matter. Dkt. No. 46. On the same day of the entry of default, NPA moved to compel arbitration. Dkt. No. 48. Judge Staton struck the motion on procedural grounds and stated that NPA would have to move for relief from default before the arbitration motion could be heard. Dkt. No. 64.

Nearly a year after the entry of default, on April 26, 2021, NPA moved to set aside the default. The motion was set to be heard shortly before the commencement of trial between Balboa and NIDL. Dkt. No. 128. Remarkably, NPA's counsel explained that she purposefully chose not to timely move to set aside the default because she was convinced that she could not get a fair hearing before Judge Staton. Dkt. No. 130 (Jarman Decl.) ¶ 5. NIDL vigorously opposed NPA's motion and argued that it would be prejudiced if the default were set aside. Dkt. No. 143.[3] The Court denied NPA's motion, explaining that "[t]he judicial system cannot function if a litigant is allowed to check in and out of a lawsuit depending on its assessment of the correctness of a ruling or the fairness of the process." Dkt. No. 155 at 6-7.

Less than two weeks later, Balboa and NIDL proceeded to trial on Balboa's breach of contract claim. At trial, NIDL's entire defense was that no contract was formed because of NPA's fraud.[4] Specifically, NIDL argued that there was no meeting of the minds with Balboa because, when NIDL affixed a wet signature to

---

[3] In view of its successful opposition to the motion to set aside the default, NIDL cannot now be heard to claim it was disadvantaged by NPA's absence at trial.

[4] NIDL opted not to pursue its fraudulent inducement counterclaim at trial. *See* Dkt. No. 231 at 2 n.1. Upon being questioned by the Court, NIDL's counsel recognized that NIDL could argue that NPA's fraud prevented a contract from being formed without "assuming th[e] additional burden" of proving fraud as an affirmative defense.

the EFA, the document had no text except for pre-printed terms and thus did not constitute assent to enter into an agreement. NIDL further argued that NPA later committed fraud by substantially altering the EFA after NIDL signed it. NIDL even offered a forensic document examiner as a witness to support its theory that NPA altered the EFA after it was executed. The jury ultimately rejected NIDL's arguments and unanimously found that a valid contract was formed between Balboa and NIDL, and that NIDL had breached that contract. The Court entered judgment in favor of Balboa on the breach of contract claim on June 14, 2021. Dkt. No. 183.

NPA appealed the denial of its motion for relief from default to the Ninth Circuit. Dkt. No. 188. The Ninth Circuit dismissed NPA's appeal on the grounds that it lacked jurisdiction to review an order denying a motion for relief from default. Dkt. No. 240. NIDL filed this motion on November 1, 2021. Dkt. No. 245-1.

### III.    DISCUSSION

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court, on application by a plaintiff, to enter a default judgment following an entry of default by the clerk against a defendant that fails to respond to a complaint. Fed R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one," *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), guided by a multi-factor test, *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (identifying seven relevant factors). "[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); Fed. R. Civ. P. 8(b)(6). A court, however, must still consider whether the complaint contains the required factual support and asserts legally sufficient claims. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default.").

Before engaging in an analysis of the *Eitel* factors, the Court must evaluate as a threshold matter whether it can enter judgment in favor of NIDL consistent with the jury verdict in favor of Balboa and against NIDL. *See Frow v. De La Vega*, 82 U.S. 552 (1872). In *Frow*, the Supreme Court held that, in a suit against multiple defendants where at least one defendant has defaulted and another has not, a "final decree" should not be entered against the defaulting party while the action was still proceeding against the other defendant. *Id.* at 554. The *Frow* holding is

based in significant part on the principle that it would be "unseemly and absurd" for a court to enter conflicting judgments. *Id.* The Court expressed its concern with inconsistent results:

> [T]his absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

*Id.* at 554. The Court further explained that "[i]t would be unreasonable to hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree." *Id.* (cleaned up).

More recent decisions interpreting *Frow* have "extended its application to situations where contradictory decisions on liability would be 'incongruous and unfair.'" *So*, 2008 WL 11337735, at *4 (quoting *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001)). The Ninth Circuit does not stand alone in recognizing the logical extension of "the *Frow* principle," *In re First T.D. & Inv., Inc.*, 253 F.3d at 532. *See, e.g., Farzetta v. Turner & Newall Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) ("*Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be . . . estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved.").

Here, granting NIDL's motion for default judgment against NPA would lead to an "unseemly and absurd" result in light of the jury verdict in this case. *Frow*, 82 U.S. at 554. NIDL's theory of fraud against NPA and its defense to the breach of contract claim brought by Balboa were based on the same factual predicate—specifically, that the EFA, when executed, was only a blank shell that NPA later altered by filling in the material terms to falsely convey that NIDL had entered into an agreement. In an exchange with the Court before jury selection, NIDL's counsel acknowledged that NIDL's fraud theory amounted to an argument that NPA's improper conduct in altering the EFA precluded contract formation, thereby defeating Balboa's contract claim. Indeed, NIDL's counsel acknowledged that his client's position was "simple"—i.e., NIDL did not sign the document approving it as an operative EFA—and that the only point of the "affirmative fraud" claim was

its potential, if any, to allow NIDL to pursue attorney's fees.  This simple position was the centerpiece of NIDL's defense at trial.  In opening statement, NIDL claimed that NPA "changed the documents after the fact" by adding new terms that falsely suggested that NIDL was borrowing money to purchase telephone equipment.  During trial, NIDL elicited evidence in support of its position, including testimony from its CEO who signed the EFA, the NPA employee who purportedly altered the EFA, and a forensic document examiner who testified in support of the theory that the EFA had been digitally altered.  In closing argument, NIDL then asserted that its CEO signed a "blank document" that NPA had represented was for future use if the relationship developed further, and that this representation was false because NPA subsequently filled in the material terms to make it appear as if NIDL already had agreed to finance the purchase of telephone equipment.  In response, Balboa argued that it was "fantastical" to believe that an NPA salesman shows up at the door of NIDL, and a sophisticated CEO of a long-established company with 80 employees signs a blank contract "for some undetermined future use."

Faced with the competing positions of the parties, the jury squarely rejected NIDL's claim that it did not form a contract with Balboa because NIDL signed a "blank" agreement that was subsequently altered by NPA.  The jury's verdict for Balboa and against NIDL is thus "logically inconsistent" with NIDL's requested entry of default judgment against NPA.  *So*, 2008 WL 11337735, at *5 (relying on *Frow* and denying motion for default judgment).  That is, the jury's finding that a valid contract was formed between Balboa and NIDL necessarily means that the EFA was not a product of NPA's fraud as alleged in the Third Party Complaint.  In these circumstances, *Frow* and its progeny preclude the entry of default judgment in favor of NIDL.  *See, e.g.*, *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("It would be incongruous and unfair to allow [the plaintiff] to collect a half million dollars from [the defaulted party] on a contract that a jury found was breached by the [the plaintiff]."); *see also Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1533 (11th Cir. 1993) (stating that because a "verdict finding fraud necessarily involve[s] a finding that no contract existed, an accompanying verdict finding a breach of contract would inherently contradict the fraud verdict").  Accordingly, the motion is denied.

## IV.    CONCLUSION

In denying NIDL's motion for default judgment, the Court does not intend to condone NPA's actions in this litigation.  NPA failed to follow basic rules and procedures throughout this lawsuit and deliberately and stubbornly elected not to

move to set aside the default for nearly a year because it improperly and incorrectly believed it could not get a fair hearing before the previously assigned judge. As the Court explained in denying NPA's motion to set aside the default:

> The judicial system cannot function if a litigant is allowed to check in and out of a lawsuit depending on its assessment of the correctness of a ruling or the fairness of the process. NPA was being required to follow the rules, and it undoubtedly would have had its arbitration claim adjudicated had it done so. But even if NPA had a different view and was dissatisfied with the rulings, its ultimate remedy was an appeal—not departure. Having departed, NPA cannot now reenter in the hope of a more favorable forum. To allow this tactic is to sanction chaos, permitting litigation to devolve into an unfair, unmanageable, and expensive mess. This is an obvious observation, and not a theoretical one. Indeed, NPA has decided that it would like to join this lawsuit after the pretrial conference and only weeks before trial is scheduled. Granting the motion would derail the schedule and be unfair to the other parties in the case, who would have to incur additional costs, suffer further delay, and potentially be placed at a strategic disadvantage. . . . All this because NPA wants to try again with a different judge.

Dkt. No. 155 at 6-7.

At some level, it would seem just to require NPA to pay for its counsel's questionable conduct in this case. A party generally should not be allowed to benefit from its decision to default. *See, e.g.*, *Xerox Corp. v. Graphic Mgmt. Servs., Inc.*, No. 11-CV-6397, 2014 WL 3894381, at *5 (W.D.N.Y. Aug. 8, 2014) ("Defendants who refuse to appear and defend against the claims made against them [should] not be allowed to benefit from their actions."). But the U.S. Supreme Court long ago articulated an overriding principle that is controlling here—the judicial system will not countenance a default judgment that conflicts with a jury's verdict. *Frow*, 82 U.S. at 554. The upshot is that a party that defaults in litigation, even intentionally, runs the risk that it will be held liable. But liability is not inevitable if the case proceeds to trial and the result cannot be reconciled with the judgment sought against the defaulting party. *Id.*; *see Gulf Coast Fans*, 740 F.2d at 1512 (reversing entry of default judgment and reasoning that "providing [the moving party] with an undeserved windfall . . . is an inappropriate method of dealing with [the defaulting party's] behavior"). Here, the jury rejected the theory upon which NIDL seeks to hold NPA liable.

Accordingly, the Court **DENIES** NIDL's Motion for Entry of Default Judgment. Given the reason for the denial, the Court also **DISMISSES WITH PREJUDICE** NIDL's Third-Party Complaint against NPA. See *In re First T.D. & Inv., Inc.*, 253 F.3d at 532 ("It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants."); *see also Omar v. Sea-Land Serv., Inc.*, 813 F.2d 981, 991 (9th Cir. 1987) (noting that a court may dismiss sua sponte "where the claimant cannot possibly obtain relief"). A final judgment will be entered separately.